No. 24-1493

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

IN RE: BESTWALL LLC,
*Debtor*,

THE OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS
OF BESTWALL LLC,
*Appellant*,

v.

BESTWALL LLC,
*Appellee*.

_____

On Direct Appeal from the United States Bankruptcy Court
for the Western District of North Carolina
Case No. 17-31795 (LTB), Hon. Laura T. Beyer

_____

## PETITION FOR REHEARING *EN BANC* OF
## OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

_____

Natalie D. Ramsey
Davis Lee Wright
ROBINSON & COLE LLP
1201 North Market Street
Suite 1406
Wilmington, Delaware 19801
(302) 516-1700

Thomas J. Donlon
ROBINSON & COLE LLP
1055 Washington Boulevard
9th Floor
Stamford, Connecticut 06901
(203) 462-7500

September 15, 2025

David C. Frederick
Joshua D. Branson
Alejandra Ávila
Hilary M. Weaver
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

Mark Kutny
Robert A. Cox, Jr.
HAMILTON STEPHENS STEEL
  + MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
(704) 344-1117

*Counsel for Appellant Official Committee of Asbestos Claimants of Bestwall LLC*

# DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1493 (22-1135) Caption: In Re: Bestwall LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Official Committee of Asbestos Claimants
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ Yes ☒ No

2.  Does party/amicus have any parent corporations?  ☐ Yes ☒ No
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ Yes ☒ No
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐ Yes ☒ No
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ Yes ☒ No
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☒ Yes ☐ No

If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

See attached for list of members of The Official Committee of Asbestos Claimants.

7.    Is this a criminal case in which there was an organizational victim?        ☐ Yes ☒ No
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:    _/s/ David C. Frederick_            Date: September 15, 2025

Counsel for:   Official Committee of Asbestos Claimants

## MEMBERS OF THE OFFICIAL COMMITTEE
## OF ASBESTOS CLAIMANTS

Paul Tice, *Successor-in-Interest to the Claims of Linda Hofferber, Dec'd*
c/o Matthew Bergman
Bergman Draper Oslund PLLC
821 Second Avenue, Suite 2100
Seattle, WA 98104

Rick Bengston, *Successor-in-Interest to the Claims of Gary Bengston, Dec'd*
c/o Michael Shepard
Shepard Law
160 Federal Street
Boston, MA 02110

Steven J. Watts, *Successor-in-Interest to the Claims of Jeffrey A. Watts, Dec'd*
c/o Christian Hartley
Maune Raichle Hartley French &
  Mudd, LLC
300 W. Coleman Boulevard
Suite 200
Mount Pleasant, SC 29464

Barbara McAlpine, *Independent Administrator of the Estate of Martin Edward McAlpine*
c/o Maura Kolb
The Lanier Law Firm
6810 FM 1960 West
Houston, TX 77069

Elizabeth Ann Harding, *Special Administrator of Stephen F. Lanphear, Dec'd*
c/o Beth A. Gori
Gori Julian & Associates, PC
156 North Main Street
Edwardsville, IL 62025

Margaret U. Trumbull, *Personal Representative of the Estate of R. Scott Trumbull*
c/o Perry Weitz
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003

Rick Benson, *Successor-in-Interest to the Claims of Eric Benson, Dec'd*
c/o Andrew O'Brien
O'Brien Law Firm, PC
815 Geyer Avenue
St. Louis, MO 63104

Emma Pearl Dixon, *Personal Representative of John Harvey Dixon, Dec'd*
c/o Carol A. Hastings
Law Offices of Peter G. Angelos, P.C.
100 N. Charles Street, 22nd Floor
Baltimore, MD 21201

Nikol Chuidian, *Special Administrator of Cresante Perreras, Dec'd*
c/o Steven Kazan
Kazan, McClain, Satterley &
  Greenwood, PLC
55 Harrison Street, Suite 400
Oakland, CA 94607

Patricia Deetz, *Special Administrator of Dave Deetz, Dec'd*
c/o Robert J. Cooney, Jr.
Cooney & Conway
120 N. LaSalle Street, 30th Floor
Chicago, IL 60602

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ...................................................................i

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION AND RULE 40(b) STATEMENT ..............................1

BACKGROUND .......................................................................................3

ARGUMENT .............................................................................................8

I.     THE MAJORITY DECISION CONFLICTS WITH SUPREME COURT PRECEDENT AND THE CONSTITUTION'S ORIGINAL MEANING .........................................................................8

      A.     The Bankruptcy Clause Limits Congress's Power To Confer Federal-Court Jurisdiction ..................................8

      B.     The Bankruptcy Clause Constrains Bankruptcy Jurisdiction ......................................................................12

      C.     The Majority Ignored Constitutional-Avoidance Principles ........................................................................14

II.     THIS CASE IS EXCEPTIONALLY IMPORTANT ...................17

CONCLUSION ........................................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iv

# TABLE OF AUTHORITIES

Page

## CASES

*Bedmar*, *In re*, 2025 WL 2496260 (Bankr. D. Del. Aug. 29, 2025)........................17

*Bestwall LLC*, *In re*, 606 B.R. 243 (Bankr. W.D.N.C. 2019), *aff'd*,
    2022 WL 67469 (W.D.N.C. Jan. 6, 2022), *aff'd*, 71 F.4th 168
    (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2519 & 2520 (2024) ........................4

*Bowles v. Russell*, 551 U.S. 205 (2007)....................................................8

*Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) ....................................16

*Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989)..............................3, 6, 15, 16

*Central Virginia Cmty. Coll. v. Katz*, 546 U.S. 356 (2006)........................2, 9, 11, 14

*Continental Illinois Nat'l Bank & Tr. Co. of Chicago v. Chicago, R.I.
    & P. Ry. Co.*, 294 U.S. 648 (1935).........................................................10, 11

*Escambia Cnty. v. McMillan*, 466 U.S. 48 (1984)................................2, 14

*Gallimore v. Missouri Pac. R.R. Co.*, 635 F.2d 1165 (5th Cir. Unit A
    Feb. 1981) ........................................................................................16

*Hanover Nat'l Bank v. Moyses*, 186 U.S. 181 (1902) ............................10

*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) ............13

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000)..............................14

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)........................1, 8

*Larrabee v. Del Toro*, 45 F.4th 81 (D.C. Cir. 2022), *cert. denied*,
    144 S. Ct. 277 (2023).................................................................2, 13

*Marshall*, *In re*, 300 B.R. 507 (Bankr. C.D. Cal. 2003), *aff'd*,
    403 B.R. 668 (C.D. Cal. 2009), *aff'd*, 721 F.3d 1032
    (9th Cir. 2013) ..............................................................................11

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)....................................14

*Qimonda AG*, *In re*, 470 B.R. 374 (E.D. Va. 2012) ................................16

*Premier Auto. Servs., Inc.*, *In re*, 492 F.3d 274 (4th Cir. 2007) ..............................15

*Ramos v. Louisiana*, 590 U.S. 83 (2020) ....................................................10

*Reid v. Covert*, 354 U.S. 1 (1957)..........................................................2, 12, 13

*Reiman*, *In re*, 20 F. Cas. 490 (S.D.N.Y. 1874) (No. 11,673) ...............................11

*Solorio v. United States*, 483 U.S. 435 (1987)...........................................13

*Taylor v. County of Pima*, 913 F.3d 930 (9th Cir. 2019)......................................16

*Teague v. Lane*, 489 U.S. 288 (1989) ......................................................16

*United States v. Denedo*, 556 U.S. 904 (2009) ...............................................8

*Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502 (1938) ....................................11

*Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996) ...........................16

*Young v. United States*, 535 U.S. 43 (2002) ...............................................14

## CONSTITUTION, STATUTES, REGULATIONS, AND RULES

U.S. Const.:

    Art. I................................................................................2, 12, 13

        § 8, cl. 4 (Bankruptcy Clause)...................... 1, 6, 7, 8, 9, 10, 12, 14, 15

    Art. III..............................................................................2, 6, 12, 13

    Amend. XI ...........................................................................2, 14

Bankruptcy Code (11 U.S.C.)................................................1, 2, 7, 8, 9, 12, 13

    § 363(b)-(c) .............................................................................4

    § 1112(b).................................................................................6

    § 1112(b)(1) .............................................................................6

    § 1129(b)(2) .............................................................................4

28 U.S.C. § 158(d)(2) ................................................................16

28 U.S.C. § 1292(b) ..................................................................16

28 U.S.C. § 1334 ...............................................................7, 8, 9

28 C.F.R. § 58.8 .........................................................................4

Fed. R. App. P. 40(b) .................................................................1

Fed. R. Bankr. P. 1007 ..............................................................4

## OTHER MATERIALS

2 Joseph Story, *Commentaries on the Constitution* (Thomas M.
    Cooley ed., 4th ed. 1873) ................................................10

## INTRODUCTION AND RULE 40(b) STATEMENT

This appeal presents the exceptionally important question whether an entity with a conceded ability to fully and timely pay its current and anticipated liabilities can invoke bankruptcy jurisdiction to circumvent state law and commercial obligations.  A divided panel of this Court answered that question "yes."  It concluded that bankruptcy courts have jurisdiction over any petition filed under the Bankruptcy Code—regardless of the debtor's ability to pay—even though the U.S. Constitution's Bankruptcy Clause limits federal courts' power to hear cases involving proper "[b]ankruptcies."  Art. I, § 8, cl. 4.  The majority's unprecedented expansion of federal-court jurisdiction drew a powerful dissent from Judge King, who explained that the panel majority's position runs afoul of the Constitution and gives free rein to profitable companies to amass wealth through delayed justice for thousands of state tort victims facing fatal diseases.

Rehearing *en banc* is warranted.  ***First***, the majority decision is unfaithful to Supreme Court precedent establishing that jurisdiction-conferring statutes must exist within constitutional limits.  *E.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 381 (1994).  The Bankruptcy Clause authorizes Congress to enact "uniform Laws on the subject of Bankruptcies."  Art. I, § 8, cl. 4.  Those guardrails, properly informed by history and tradition, reserve "[b]ankruptc[y]" to actually bankrupt debtors—*i.e.*, those unwilling, or willing but unable, to pay their

debts.  The record is undisputed that Bestwall is no such debtor:  it conceded, and the bankruptcy court found, its willingness and ability to pay its liabilities now and for the foreseeable future.  Yet the majority overread Congress's jurisdiction-conferring statute and ignored "the Constitution's more limited delegation of power under the Bankruptcy Clause."  Op. 30 (King, J., dissenting).  Contrary to Supreme Court precedent, the panel's holding renders any case merely invoking the Bankruptcy Code "consistent with the Bankruptcy Clause."  *Central Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 378 n.15 (2006).

*Second*, the majority erroneously concluded that bankruptcy jurisdiction is constitutionally limited only by Article III.  That expansive interpretation of federal-court jurisdiction renders "the subject of Bankruptcies" in Article I jurisdictionally toothless.  The Supreme Court, however, has recognized other Article I constraints on federal jurisdiction, such as in military courts-martial.  *See Reid v. Covert*, 354 U.S. 1, 19-41 (1957) (plurality); *Larrabee v. Del Toro*, 45 F.4th 81, 88 (D.C. Cir. 2022) (Rao, J.) (collecting Supreme Court cases), *cert. denied*, 144 S. Ct. 277 (2023).  The Court also has recognized that other constitutional provisions (such as the Eleventh Amendment) constrain Article III power.

*Third*, contravening the "well established principle" that courts should refrain from deciding "a constitutional question if there is some other ground upon which to dispose of the case," *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51 (1984)

2

(per curiam), the majority ignored the bankruptcy court's misapplication of this

Court's statutory test in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989),

to render an exceptionally broad constitutional ruling.

**Fourth**, this case is of surpassing importance. The majority's sweeping

holding transforms bankruptcy as we know it by "allow[ing] the extraordinary

powers of the bankruptcy court . . . to be deployed against" any disfavored creditor.

Op. 31 (King, J., dissenting). Wealthy, sophisticated debtors now have a roadmap

to concoct a bankruptcy case in this Circuit to escape state tort and commercial

obligations. This exceptionally important case also demonstrates "the very real"

human cost of allowing a wealthy company with a long and stable record of

profitability to weaponize through stratagems like the Texas Two-Step "our

Nation's bankruptcy system . . . against tort victims as a tool for delay and

leverage." Op. 26 (King, J., dissenting).

## BACKGROUND

Georgia-Pacific is a multi-billion-dollar entity whose products exposed

people to asbestos over decades. JA600 ¶ 5; JA603 ¶ 10. The victims of that

exposure pursued claims before juries in the tort system. Although costs of

litigating and settling asbestos claims remained well within Georgia-Pacific's vast

means, JA1688 ¶ 7, the company contrived a scheme, now commonly called the

"Texas Two-Step," to separate its business assets from its asbestos liabilities and

to isolate those liabilities in bankruptcy. Georgia-Pacific "moved" to Texas and split itself into two new entities: New GP, which continued to own and maintain almost all the assets and operations of Georgia-Pacific ("Old GP"), and Bestwall, which received Old GP's asbestos liabilities and minimal assets. JA604-605 ¶ 14. Bestwall also received a funding agreement from New GP. JA432-446.

Immediately after its creation, Bestwall voluntarily filed for bankruptcy. It obtained an automatic stay and consolidated Old GP's asbestos-related litigation into a single—and federal—forum of its choice. JA386-402. It also received protections for the entire Georgia-Pacific enterprise that it could not have obtained outside of bankruptcy, including a preliminary injunction barring all current and future asbestos plaintiffs from litigating against New GP and its affiliates. *In re Bestwall LLC*, 606 B.R. 243 (Bankr. W.D.N.C. 2019), *aff'd*, 2022 WL 67469 (W.D.N.C. Jan. 6, 2022), *aff'd*, 71 F.4th 168 (4th Cir. 2023). By making Bestwall the bankruptcy petitioner, New GP escaped the bankruptcy requirements of submitting to the bankruptcy court's control, publicly disclosing its financial dealings, and restricting equity owners' ability to extract money before paying creditors. *See* 11 U.S.C. §§ 363(b)-(c), 1129(b)(2); Fed. R. Bankr. P. 1007; 28 C.F.R. § 58.8. In other words, Georgia-Pacific "placed its tort liabilities to thousands of workers behind a wall of bankruptcy protection, without itself

undergoing the scrutiny, transparency, or risk that bankruptcy typically entails." Op. 24 (King, J., dissenting).

Bestwall concedes it is a wealthy company that, with or without bankruptcy, is "able to pay any conceivable liabilities now and in the foreseeable future." JA1906 ¶ 51; JA791-793; JA607 ¶ 16; JA1736-1737 ¶ 34. When Bestwall filed for bankruptcy, Georgia-Pacific's assets were estimated at more than $28.3 billion. JA2157 ¶ 10. In the year before Bestwall's bankruptcy filing, Georgia-Pacific paid its parent company, Koch Industries, a $2 billion dividend. JA1688 ¶ 7. Since Bestwall's bankruptcy filing, New GP's ultimate parent has received dividends of more than $7.4 billion and has increased shareholder equity by more than $7 billion. JA2157 ¶ 10. By the end of 2024, New GP's acknowledged shareholder equity was approximately $27.8 billion. *See* Decl. of Julie A. Anderson ¶ 10, No. 17-31795, ECF #3690 (Jan. 22, 2025).

By contrast, in the last year before bankruptcy, Georgia-Pacific spent $200 million responding to asbestos claims (approximately one-third of which were defense costs). JA458. Since its bankruptcy filing, Bestwall has paid zero dollars to its approximately 58,000 current asbestos claimants—a number that continues to rise each day due to new diagnoses. Except for Bestwall's creditors (*i.e.*, the ordinary Americans who suffer as Georgia-Pacific's tort victims), all of Old GP's other creditors have continued to be paid in the ordinary course. JA2157 ¶ 10.

Shortly after Bestwall filed for bankruptcy, the Committee moved to dismiss Bestwall's petition on the statutory ground that it was filed in bad faith. *See* 11 U.S.C. § 1112(b)(1). In 2019, the bankruptcy court denied the motion. JA787-796. The court found that "Bestwall has the full ability to meet all of its obligations." JA791. But, misapplying this Court's decision in *Carolin*, the court concluded that Bestwall's financial wherewithal meant that its bankruptcy case was not objectively futile. The court did not reach the issue of subjective bad faith. Although the bankruptcy court certified its ruling, this Court denied the Committee's petition for direct appeal. Op. 7 n.7.

The Committee later filed the present motion to dismiss for lack of jurisdiction. The bankruptcy court once again found that Bestwall is "able to pay any conceivable liabilities now and in the foreseeable future." JA1906 ¶ 51. Declining to revisit its statutory holding under *Carolin*, the court concluded that it had jurisdiction over Bestwall's bankruptcy under the Bankruptcy Clause. JA1918-1919 ¶ 60. The court certified its order for direct appeal, and this Court granted review.

A divided panel of this Court affirmed. The majority concluded that the constitutional limit on bankruptcy jurisdiction derives only from Article III's requirements (*i.e.*, federal-question jurisdiction and standing). Op. 9-11. It then characterized the Committee as not arguing that Bestwall lacks Article III standing.

Op. 11.  But that characterization misunderstood the key principle at issue: whether merely invoking the Bankruptcy Code was sufficient to pass jurisdictional muster.  The majority reasoned that, because the Code is a federal law, it must follow that all "petitions for relief under the Bankruptcy Code"—even those filed by debtors with a conceded ability to pay, such as Bestwall—are jurisdictionally proper under the Constitution.  Op. 3, 9.

Judge King dissented.  He explained that the Founding-era concept of "[b]ankruptc[y]" under the Bankruptcy Clause did not include debtors like Bestwall with a conceded ability to pay all debts.  Op. 25.  And Congress's grant of jurisdiction under 28 U.S.C. § 1334, which authorizes the bankruptcy court to hear "cases" "under Title 11," "does not—and cannot—independently determine what constitutes a 'case' that Congress may authorize under [the Bankruptcy Clause]," let alone "override" the Constitution and its original meaning.  Op. 25, 30.  Judge King also aptly emphasized that "[t]he human cost of this bankruptcy delay cannot be overstated."  Op. 29.  Since Bestwall filed for bankruptcy, Georgia-Pacific has continued to amass extraordinary wealth, while more than "25,000 Claimants have died without any resolution of their claims."  *Id.*  Many others have been "saddled with medical debt and left without recourse."  *Id.*

7

## ARGUMENT

A divided panel of this Court incorrectly held that bankruptcy jurisdiction extends to all cases filed under the Bankruptcy Code, regardless of whether the case is a proper "[b]ankruptc[y]" under the Bankruptcy Clause. Art. I, § 8, cl. 4. That decision conflicts with the Constitution's original meaning and decades of Supreme Court precedent. It presents an exceptionally important question about the limits of federal-court jurisdiction: left undisturbed, the majority's holding will empower wealthy companies to abuse our Nation's bankruptcy system by circumventing state liability and commercial systems through manipulative bankruptcy filings.

## I.   THE MAJORITY DECISION CONFLICTS WITH SUPREME COURT PRECEDENT AND THE CONSTITUTION'S ORIGINAL MEANING

### A.   The Bankruptcy Clause Limits Congress's Power To Confer Federal-Court Jurisdiction

Supreme Court precedent is clear that "[f]ederal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. In turn, Congress's jurisdiction-conferring statutes must coexist "[w]ithin constitutional bounds." *United States v. Denedo*, 556 U.S. 904, 912 (2009) (quoting *Bowles v. Russell*, 551 U.S. 205, 212 (2007)).

Bankruptcy jurisdiction is limited by the Bankruptcy Clause and 28 U.S.C. § 1334. The Bankruptcy Clause circumscribes the scope of a proper "[b]ankruptc[y]"

8

based on the original meaning of that term.  Art. I, § 8, cl. 4; *see Katz*, 546 U.S. at 362-63.  Consistent with that constitutional limit, § 1334 circumscribes the scope of a proper "[b]ankruptcy" to cases "arising under," "arising in," or "related to" the Bankruptcy Code.  28 U.S.C. § 1334.

The majority acknowledged that § 1334 "must remain within constitutional limits."  Op. 12-13.  But contrary to settled precedent, it erroneously "accept[ed] that bankruptcy jurisdiction exists simply because Congress said so—that is, because 28 U.S.C. § 1334 confers jurisdiction over" cases filed under the Bankruptcy Code—sidestepping "the Constitution's limited delegation of power under the Bankruptcy Clause."  Op. 30, 32 (King, J., dissenting).

The panel's error was case dispositive because Bestwall falls well outside the Bankruptcy Clause's limits.  At the Founding, the scope of a proper "[b]ankruptc[y]," Art. I, § 8, cl. 4, did not include debtors with a conceded ability to pay all their debts.  Founding-era laws regulated the relationship between creditors and actually bankrupt debtors, *i.e.*, those unwilling, or willing but unable, to pay their debts, as the Committee explained at length in its brief.  Opening Br. 17-22; *see also* Op. 36-38 (King, J., dissenting).

Variations existed as to the remedial "schemes for discharging debtors and their debts," *Katz*, 546 U.S. at 365-66; *see* Opening Br. 20, prompting the Framers to empower Congress to adopt "uniform" federal law "on the subject

of Bankruptcies," Art. I, § 8, cl. 4; *see Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 186 (1902) (Congress enjoys "discretion" to enact legislation regulating "distribution and discharge" in connection with "the subject of bankruptcies"). But lack of remedial uniformity aside, the word "[b]ankruptc[y]" in the Bankruptcy Clause "meant *something*—otherwise, there would have been no reason to write it down." *Cf. Ramos v. Louisiana*, 590 U.S. 83, 89 (2020). As Founding-era sources recognize, the term "bankruptcy" meant a proceeding "for the benefit and relief of creditors and their debtors, *in cases in which the latter are unable or unwilling to pay their debts*." 2 Joseph Story, *Commentaries on the Constitution* § 1113, at 50 n.3 (Thomas M. Cooley ed., 4th ed. 1873) (emphasis added). Therefore, "a law on the subject of bankruptcies, in the sense of the Constitution, is a law making provisions for cases of *persons failing to pay their debts*." *Id.* (emphasis added); *see* Opening Br. 22-23 (collecting similar Founding-era sources).

This historical understanding tracks Supreme Court precedent and post-ratification legislation, which gradually expanded bankruptcy relief to wider classes of debtors (including corporations) but never exceeded the scope of historical practice—regulating debtors either unwilling or unable to pay. Opening Br. 25-27; *e.g.*, *Continental Illinois Nat'l Bank & Tr. Co. of Chicago v. Chicago, R.I. & P. Ry. Co.*, 294 U.S. 648, 669, 672-73 (1935) (extending relief to railroad corporation "unable to meet its debts as they mature" and rejecting the view that

Congress's power "under the [B]ankruptcy [C]lause . . . has no limitations").
When interpreting the constitutionality of post-ratification laws, the Supreme Court
consistently recognized that "[t]he subject of bankruptcies is nothing less than
'the subject of the relations between an *insolvent* or *nonpaying* or *fraudulent*
debtor, and his creditors.'" *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502,
513-14 (1938) (quoting *In re Reiman*, 20 F. Cas. 490, 496 (S.D.N.Y. 1874)
(No. 11,673)) (emphases added); *Continental Illinois*, 294 U.S. at 672-73 (same);
*Katz*, 546 U.S. at 370-71 (same); *see also* Opening Br. 26-27 (collecting cases).

Bestwall undisputedly does not meet that historical test. Factual findings by
the bankruptcy court and repeated concessions by Bestwall confirm that Bestwall
is "able to pay any conceivable liabilities now and in the foreseeable future."
JA1906 ¶ 51; JA791 (similar).[1] Neither the majority nor Bestwall offered a single
historical example supporting the constitutionality of Bestwall's bankruptcy filing.
By agreeing with Bestwall, the bankruptcy court and the majority ignored "history
and tradition" and "erroneously relied on congressional policy" alone. Op. 44
(King, J., dissenting).

---

[1] As the bankruptcy court recognized, and the Committee has consistently
argued, the constitutional limitation on subject-matter jurisdiction presents a
different concept than "the statutory concept of balance-sheet or liquidity
insolvency." Opening Br. 40; *accord In re Marshall*, 300 B.R. 507, 510 (Bankr.
C.D. Cal. 2003), *aff'd*, 403 B.R. 668 (C.D. Cal. 2009), *aff'd*, 721 F.3d 1032
(9th Cir. 2013).

**B.     The Bankruptcy Clause Constrains Bankruptcy Jurisdiction**

The majority erroneously concluded bankruptcy-court jurisdiction is limited only by Article III's doctrinal constraints.  Op. 9-11.  That sweeping view of bankruptcy jurisdiction functionally means that, if a putative debtor merely invokes the Bankruptcy Code in its filing, the Bankruptcy Clause plays no rule in limiting a federal court's power to hear the case.  That cannot be correct—the whole point of "uniform" laws on bankruptcy in Article I was to justify federal supremacy in what otherwise would be a patchwork of state-law cases.  That federal interference in traditional state-law matters was not intended to be all-encompassing.

In the analogous area of military jurisdiction, the Supreme Court has limited the jurisdiction of Article I military courts so that it does *not* exceed Article I constraints.  *See Reid*, 354 U.S. at 19-20 (plurality).  Looking to history, the Court concluded that, although Congress has the power under Article I "to make all rules necessary and proper to govern and regulate those persons who are serving in the 'land and naval Forces,'" such power cannot "operate to extend military jurisdiction" beyond Article I's limitations—*i.e.*, "the land and naval Forces." *Id*. at 20-21.  That is especially so because military courts implicate "summary procedures" with "less emphasis . . . on protecting the rights of the individual than . . . civilian courts."  *Id*. at 35-36.  "Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts, and, more important, acts as

a deprivation of the right to jury trial and of other treasured constitutional protections." *Id*. at 21.  Courts therefore analyze whether a case properly concerns the "land and naval Forces" as part of their jurisdictional inquiry. *See*, *e.g.*, *Larrabee*, 45 F.4th at 87-88.

The majority dismissed *Reid* as "a vestige of an era" in which the term jurisdiction was "used more liberally than [it is] today."  Op. 14-15.  But the majority mischaracterized *Reid*.  That case concerned the *power* of federal courts to hear cases involving the *non*-military spouse of a service member, which is a classic jurisdiction question.  The majority also relied on inapposite authority that did not discuss *Reid*, let alone bankruptcy jurisdiction.  That case law merely clarified that some statutes "should not be described as jurisdictional" because they are "claim-processing rules" subject to equitable tolling.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).[2]  Since *Reid* was decided, courts have recognized that the opinion speaks to the interplay between Article I court-martial "jurisdiction" and Article III jurisdiction.  *Solorio v. United States*, 483 U.S. 435, 439 (1987); *Larrabee*, 45 F.4th at 87 ("Because any expansion of court-martial jurisdiction necessarily encroaches on the jurisdiction of [Article III] federal courts . . . , we cannot simply defer to Congress' decision to extend court-

---

[2] Elsewhere, the majority similarly relied on inapposite cases establishing that some provisions of the Bankruptcy Code are not jurisdictional.  Op. 14 n.13.

13

martial jurisdiction over Fleet Marine Reservists. . . . [T]he Supreme Court has repeatedly declined to defer to Congress.") (cleaned up) (collecting cases).

So, too, here: expanding bankruptcy-court jurisdiction under the panel majority's holding extends "the subject of Bankruptcies" well beyond its original meaning. Art. I, § 8, cl. 4. Because the Framers understood that bankruptcy would displace claim resolution from state courts to federal courts, they intended to limit that displacement to debtors unwilling or unable to pay. *See Young v. United States*, 535 U.S. 43, 50 (2002) ("bankruptcy courts . . . are courts of equity"); *Katz*, 546 U.S. at 369 n.9 (discussing "singular nature of bankruptcy courts' jurisdiction"); *cf. Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999) ("the inadequacy of the [assets] to pay all the claims" is what justifies "limit[ing] . . . an early feast to avoid a later famine").[3]

## C. The Majority Ignored Constitutional-Avoidance Principles

The majority's choice to decide this case under an exceptionally broad constitutional interpretation, rather than take up the statutory limitations on bankruptcy, conflicts with the "well established principle . . . that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Escambia Cnty.*, 466 U.S. at 51.

---

[3] The Court also has confirmed that federal-court jurisdictional restraints exist elsewhere in the Constitution's broader structure. *See, e.g.*, *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (Eleventh Amendment).

14

Earlier in this litigation, the bankruptcy court misapplied *Carolin*, which authorizes courts to dismiss cases filed in bad faith under 11 U.S.C. § 1112(b). That court concluded that a wealthy tortfeasor like Bestwall with a conceded ability to pay all its debts can meet the "objective futility" test under *Carolin*. JA791-793. But *Carolin* articulated that test based on the financial condition of the debtor, which, unlike Bestwall, had "no realistic chance to rehabilitate its business successfully" because it lacked sufficient financial resources. 886 F.2d at 701-02; *see id.* at 695-96, 702-03.[4]

As the Committee argued below, the bankruptcy court's failure to reconsider "the proper scope and application of the Fourth Circuit's *Carolin* test" helps explain the novelty and unprecedented nature of the constitutional question. JA1871. As the Committee explained to the panel, the bankruptcy court ignored well-established constitutional-avoidance principles by failing to reconsider its statutory error, making an erroneous constitutional pronouncement instead. Opening Br. 44-45; Reply Br. 26-29. The majority repeated the bankruptcy court's

---

[4] The bankruptcy court also incorrectly declined to address Bestwall's "subjective bad faith," stating that it could address the issue "at confirmation." JA793; *see Carolin*, 886 F.2d at 701 n.3; *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 280-81 (4th Cir. 2007) (applying both *Carolin* prongs at outset of litigation). Confirmation, however, is the *end* of a bankruptcy process that Bestwall has no incentive to finalize; protracted litigation only benefits New GP. The Bankruptcy Clause has never sanctioned one-sided processes that uniquely benefit wealthy tortfeasors.

sequential errors, erroneously opining on constitutional questions when it should have reconsidered the bankruptcy court's mistaken reading of *Carolin*.

This *en banc* Court can and should correct course now. The statutory issue is preserved and before the Court, because the bankruptcy court's entire order, including its reconsideration ruling, is at issue. *See* 28 U.S.C. § 158(d)(2); *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) ("appellate jurisdiction applies to the *order* certified to the court of appeals"); Hr'g Tr. 77:12-79:4, No. 17-31795, ECF #3354 (Mar. 28, 2024) (bankruptcy court recognizing this Court may consider *Carolin* issue and acknowledging its significant public importance).

Further, the panel's earlier decision to deny review of the statutory question can be revisited now. Certifying a direct appeal under § 158(d)(2) is a discretionary decision. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015); *In re Qimonda AG*, 470 B.R. 374, 383 (E.D. Va. 2012). That discretion operates much like the discretion afforded to courts of appeals under 28 U.S.C. § 1292(b) and the Supreme Court in denying certiorari: review might be denied for any reason, and denials have no precedential value. *See Gallimore v. Missouri Pac. R.R. Co.*, 635 F.2d 1165, 1168 n.4 (5th Cir. 1981); *Taylor v. County of Pima*, 913 F.3d 930, 934-35 (9th Cir. 2019); *Teague v. Lane*, 489 U.S. 288, 296 (1989).

## II.     THIS CASE IS EXCEPTIONALLY IMPORTANT

The majority's unprecedented expansion of bankruptcy jurisdiction presents an issue of exceptional importance.  The decision applies to "all debtors," Op. 9, and is the proverbial fish that swallows the ocean:  if left undisturbed, any wealthy and sophisticated person or corporation will be able to concoct a bankruptcy and engage in forum-shopping in the Fourth Circuit to delay or escape their tort liabilities or commercial obligations.  *Cf. In re Bedmar*, 2025 WL 2496260 (Bankr. D. Del. Aug. 29, 2025) (dismissing case by debtor that used divisional-merger statute to modify certain leases and attempted to use bankruptcy to escape those commercial obligations).  In addition, the majority's decision unduly delays justice for thousands of tort victims facing asbestos-related diseases caused by the Georgia-Pacific enterprise.  The majority's cold reassurance that the Committee can "argue that solvent debtors are not entitled to bankruptcy protection" at plan confirmation or even beyond it, Op. 16, ignores the irreparable harm such unnecessary delay causes to victims facing a wealthy debtor.  It also imposes unnecessary burdens on courts and litigants in cases outside the scope of constitutional limitations.

As Judge King well said in dissent, "[b]y treating Bestwall's petition as a bankruptcy filing within its jurisdiction, the bankruptcy court—and now this Court—have given their imprimatur to a corporate strategy that mocks the

structure of Article I, subverts our Nation's history and tradition of bankruptcy, and inflicts grievous harm on our fellow Americans." Op. 45. By sanctioning such gamesmanship, the Fourth Circuit will be (and has become) the forum of choice for Texas Two-Step "debtors" and those who can fully pay their debts but choose not to.

## CONCLUSION

The Court should grant rehearing *en banc*.

Respectfully submitted,

/s/ *David C. Frederick*

Natalie D. Ramsey
Davis Lee Wright
ROBINSON & COLE LLP
1201 North Market Street
Suite 1406
Wilmington, Delaware 19801
(302) 516-1700
nramsey@rc.com
dwright@rc.com

Thomas J. Donlon
ROBINSON & COLE LLP
1055 Washington Boulevard
9th Floor
Stamford, Connecticut 06901
(203) 462-7500
tdonlon@rc.com

David C. Frederick
Joshua D. Branson
Alejandra Ávila
Hilary M. Weaver
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
jbranson@kellogghansen.com
aavila@kellogghansen.com

Mark Kutny
Robert A. Cox, Jr.
HAMILTON STEPHENS STEEL
  + MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
(704) 344-1117
mkutny@lawhssm.com

September 15, 2025

rcox@lawhssm.com

*Counsel for Appellant Official Committee of Asbestos Claimants of Bestwall LLC*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this document complies with:  (i) the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) because this document uses a proportionately spaced face; (ii) the type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because this document is written in 14 point Times New Roman; and (iii) the word limit of Federal Rule of Appellate Procedure 40(d)(3) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,900 words.

Dated:  September 15, 2025          By:    /s/ *David C. Frederick*
                                                    David C. Frederick

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25 and Local Rule 25(a), I hereby certify that the foregoing Petition for Rehearing *En Banc* of Official Committee of Asbestos Claimants was electronically filed using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *David C. Frederick*
David C. Frederick