## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE OFFICIAL COMMITTEE OF
ASBESTOS CLAIMANTS OF BESTWALL LLC,

*Appellant,*

v.

BESTWALL LLC,

*Appellee.*

On Direct Appeal from the United States Bankruptcy Court
for the Western District of North Carolina, No. 17-31795 (LTB)

## RESPONSE OF APPELLEE BESTWALL LLC
## IN OPPOSITION TO PETITION FOR REHEARING *EN BANC*

Gregory M. Gordon
JONES DAY
2727 North Harwood St., Ste. 500
Dallas, Texas 75201
Telephone: (214) 220-3939
gmgordon@jonesday.com

Jeffrey B. Ellman
JONES DAY
1221 Peachtree St., N.E., Ste. 400
Atlanta, Georgia 30361
Telephone: (404) 581-8309
jbellman@jonesday.com

Noel J. Francisco
C. Kevin Marshall
Caleb Redmond
Lauren Straight
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
njfrancisco@jonesday.com
ckmarshall@jonesday.com
credmond@jonesday.com

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW &
HINSON, P.A.
600 South Tryon St., Ste. 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
gcassada@rbh.com
rworf@rbh.com

*Counsel for Appellee Bestwall LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ...................................................................................3

REASONS FOR DENYING THE PETITION..............................................8

I.  THE PANEL DECISION AFFIRMING SUBJECT-MATTER JURISDICTION BASED ON SETTLED PRECEDENT DOES NOT CONFLICT WITH A DECISION OF ANY COURT. ......................................................8

   A. The panel decision conflicts with "no court" by holding that a debtor's eligibility is not a *jurisdictional* question. .........................8

   B. The panel did not address the petition's side issues......................12

      1. The panel did not resolve the merits of the Committee's Bankruptcy Clause argument, which is nonetheless wrong......12

      2. Constitutional avoidance was not addressed by either the panel decision or the dissent and could not apply here. ...........14

II. THE PETITION PRESENTS NO QUESTION OF EXCEPTIONAL IMPORTANCE. ................................................................................16

   A. The Committee mischaracterizes the panel decision. ....................16

   B. The Committee's incessant attacks are what "unduly delay justice," and its position would extend that costly delay to innumerable other bankruptcy cases. ..........................................18

   C. The panel decision reduces forum shopping. ................................19

CONCLUSION...................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ................................................................ 4

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................. 3

*B.R. v. F.C.S.B.*,
17 F.4th 485 (4th Cir. 2021) ................................................................ 8

*Bestwall LLC v. Armstrong World Indus.*,
47 F.4th 233 (3d Cir. 2022) ................................................................. 6

*Blair v. Bestwall, LLC*,
99 F.4th 679 (4th Cir. 2024) ............................................................... 6

*Bunk v. Gosselin World Wide Moving, N.V.*,
741 F.3d 390 (4th Cir. 2013) ............................................................... 9

*Carolin Corp. v. Miller*,
886 F.2d 693 (4th Cir. 1989) ............................................................... 1

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ...................................................................... 9, 11

*Cont'l Ill. Nat'l Bank & Tr. Co. of Chi. v. Chi. Rock Island & Pac. Ry. Co.*,
294 U.S. 648 (1935) ........................................................................... 13

*Dillon v. BMO Harris Bank, N.A.*,
787 F.3d 707 (4th Cir. 2015) ............................................................. 15

*Escambia Cnty. v. McMillan*,
466 U.S. 48 (1984) ............................................................................ 16

*Hanover Nat. Bank v. Moyses*,
186 U.S. 181 (1902) .......................................................................... 13

*In re Aldrich Pump LLC,*
    2023 WL 9016506 (Bankr. W.D.N.C. Dec. 28, 2023) ............................ 10

*In re Bestwall LLC,*
    71 F.4th 168 (4th Cir. 2023)........................................................ 1, 3, 6, 18

*In re Kaiser Gypsum Co.,*
    135 F.4th 185 (4th Cir. 2025)................................................................ 4

*In re Klein,*
    42 U.S. 277 (Mo. Cir. 1843) .................................................................13

*In re LTL Management LLC,*
    64 F.4th 84 (3d Cir. 2023)................................................................... 10

*In re Premier Auto. Servs., Inc.,*
    492 F.3d 274 (4th Cir. 2007).................................................................16

*In re Whittaker Clark & Daniels Inc,*
    —F.4th—, 2025 WL 2611753 (3d Cir. Sep. 10, 2025)..............................11

*Kokkonen v. Guardian Life Insurance Co. of America,*
    511 U.S. 375 (1994) .............................................................................11

*Lindke v. Tomlinson,*
    31 F.4th 487 (6th Cir. 2022) .................................................................16

*Norfolk S. Ry. Co. v. Guthrie,*
    233 F.3d 532 (7th Cir. 2000).................................................................16

*Reid v. Covert,*
    354 U.S. 1 (1957) ............................................................................11, 12

*Siegel v. Fitzgerald,*
    596 U.S. 464 (2022) .......................................................................13, 14

*United States v. Lopez,*
    514 U.S. 549 (1995).............................................................................. 9

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens,*
    529 U.S. 765 (2000) ......................................................... 9

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. Article I, § 8 ...............................................14

U.S. Const. Article III, § 2 ............................................. 8

11 U.S.C. § 109 .............................................................. 4

11 U.S.C. § 503 .............................................................. 3

11 U.S.C. § 524 ................................................1, 3, 4, 5, 17

11 U.S.C. § 1103 ............................................................. 3

11 U.S.C. § 1112 .......................................................5, 17

28 U.S.C. § 158 ............................................................. 5

28 U.S.C. § 1331 ............................................................ 9

28 U.S.C. § 1334 .......................................................5, 8

28 U.S.C. § 1408 ...........................................................19

28 U.S.C. § 1411 ............................................................ 4

28 U.S.C. § 1412 ...........................................................19

**OTHER AUTHORITIES**

Fed. R. App. P. 40...............................................8, 11, 12

**INTRODUCTION**

Bestwall filed its Chapter 11 bankruptcy to equitably resolve more than 64,000 asbestos claims and substantial projected future claims. When it filed, 75% of the claims had been pending a decade or more, 50% for 15 years or more. The trust Bestwall seeks to establish through a plan under 11 U.S.C. § 524(g) would promptly process and pay these claims. Already, Bestwall has irrevocably committed $1 billion to a qualified settlement fund to compensate claimants.

Early on, the Official Committee of Asbestos Claimants, petitioner here, moved to dismiss Bestwall's case under *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), as filed in "bad faith." The Committee also opposed Bestwall's motion to stay litigation of the exact same claims against Bestwall's affiliates. The Bankruptcy Court in 2019 denied dismissal and granted the stay, finding that Bestwall had "a valid reorganizational purpose," experienced "sufficient financial distress" to pursue § 524(g) relief, and sought "to resolve" (not "avoid") liability. 605 B.R. 43, 49-50 (Bankr. W.D.N.C. 2019) (motion to dismiss); 606 B.R. 243, 249-52, 254-58 (Bankr. W.D.N.C. 2019) (stay). The District Court and this Court declined interlocutory review of the denial of dismissal. This Court affirmed the stay (71 F.4th 168 (2023)) and declined *en banc* review.

*Five years* after its first dismissal motion, the Committee filed another (its third), asserting that the Constitution's Bankruptcy Clause bars Bestwall's case because Bestwall is not "actually bankrupt." To sidestep its unexplained delay, the Committee painted this argument as "jurisdictional." The Bankruptcy Court denied dismissal again, and this Court, on direct appeal, affirmed on the "narrow question" of jurisdiction—because Bestwall's case arises under federal law. Op.9, 16.

None of this warrants *en banc* review. The "straightforward" decision does not conflict with *any* case. Op.9. Following Supreme Court precedents, the panel held that a challenge to *Congress's authority* under Article I attacks the *merits* of the case—not a *court's jurisdiction* over it. Otherwise, *every federal-question case* would require courts to decide—as a jurisdictional matter—an Article I constitutional question. No case supports that, just as "no court has ever accepted" that a "debtor's ineligibility for bankruptcy is jurisdictional." Op.14 n.13.

Ignoring the clarity of the law on jurisdiction, the Committee invites this Court to consider the merits of its belated constitutional argument and to revisit the application of *Carolin* in the *prior* order in 2019. The panel did not reach either collateral issue.

Nor does the decision present any question of exceptional importance. The Committee offers mischaracterization and vague complaints about delay. Yet it is *the Committee's* tactics, including its late, successive motion, that are causing delay. *See, e.g.*, *Bestwall*, 71 F.4th at 183. And its unprecedented jurisdictional rule and undefined "actually bankrupt" requirement would reach bankruptcies *of all kinds*, as it *conceded*—thereby spreading confusion and delay widely.

## BACKGROUND

**1.** The "asbestos-litigation crisis" has delayed recovery for claimants, wasted resources, and bogged down courts. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 598 (1997). In response, Congress amended the Bankruptcy Code (11 U.S.C.) to add § 524(g), which "allows a debtor" facing substantial asbestos claims "to address in one forum all potential asbestos claims against it." *Bestwall*, 606 B.R. at 249. Section 524(g) authorizes that through a Chapter 11 plan that funds a trust to pay claimants and (through a permanent "channeling" injunction) directs all claims to the trust. *See id.* at 252-53. It also grants claimants special protections, including (1) appointment of a future claimants' representative and a current-claimants' committee, both funded by the debtor (11 U.S.C. §§ 503(b)(2), 1103(a)); (2) a 75% super-majority vote of claimants for the plan; and

(3) district-court approval of the plan as "fair and equitable." § 524(g)(2)(B), (3)(A), (4), (5). Personal-injury claimants also remain "entitled … to have a jury trial." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986); *see* 28 U.S.C. § 1411(a).

Chapter 11, enacted in 1978, has never required a debtor to be insolvent or have any particular financial condition—unlike other chapters. *Compare* 11 U.S.C. § 109(d), *with* § 109(c)(3), (e). Courts thus have authorized over 60 trusts under § 524(g), including for solvent companies. Op.22 (concurrence); Resp.Br.7. Ultimately, a Chapter 11 debtor employing § 524(g) must propose a feasible plan in good faith that satisfies all its requirements, and an order confirming the plan is appealable as of right. *See generally In re Kaiser Gypsum Co.*, 135 F.4th 185 (4th Cir. 2025).

**2.** Bestwall's predecessor, "Old GP," began facing asbestos litigation in the 1970s from sales of joint-compound containing small amounts of asbestos. JA611-12 ¶¶ 22-23. For decades it was a peripheral defendant. In the 2000s, however, as the major defendants entered bankruptcy, it became a primary target; claims and costs skyrocketed. JA611-14 ¶¶ 23-29; Op.3-4.

Facing this "magnitude and projected continuation" of litigation, Old GP restructured in 2017 under a decades-old provision of Texas's Business Organizations Code. 605 B.R. at 47. Essentially, Old GP split into two new

4

companies, Bestwall and Georgia-Pacific LLC ("New GP"). *Id.* Bestwall received Old GP's asbestos liabilities and various assets—particularly an uncapped Funding Agreement that obligates New GP to backstop Bestwall's obligations, including for a § 524(g) trust. *Id.* at 47-48; Op.5-6.

**3.** Bestwall filed for bankruptcy in late 2017, to "resolve mass asbestos claims through a section 524(g) trust." 605 B.R. at 46. In 2018, the Committee moved to dismiss for "cause" under 11 U.S.C. § 1112(b) because Bestwall supposedly filed in "bad faith." (In its motion, the Committee first explicitly asserted the court had "subject matter jurisdiction to consider this matter" under 28 U.S.C. § 1334. JA511; *cf.* 605 B.R. at 47.) The Bankruptcy Court denied the motion in 2019, applying this Court's rule in *Carolin*. *Id.* at 47-50. It also noted the Committee's "agree[ment]" that "filing for Chapter 11 ... need not be due to insolvency" and that resolving claims through "§ 524(g) is a valid reorganizational purpose." *Id.* at 49. The court found that Bestwall's existing and projected asbestos claims created "sufficient financial distress" for pursuing § 524(g) relief. *Id.* This Court and the District Court declined interlocutory review. D.I. 13, No. 19-408; D.I. 19, No. 19-396 (W.D.N.C.); *see* 28 U.S.C. § 158(a), (d).

Meanwhile, Bestwall obtained a stay, preventing litigation of Bestwall claims outside the bankruptcy. 606 B.R. at 258. The Committee appealed,

and the District Court affirmed. 2022 WL 67469. The Committee appealed again, and this Court affirmed too—emphasizing that "bankruptcy procedures promote the equitable, streamlined, and timely resolution of claims in one central place compared to the state tort system, which can and has caused delays in getting payment for legitimate claimants." 71 F.4th at 183. The full Court and Supreme Court declined further review. D.I. 82, No. 22-1127; 144 S. Ct. at 2519-20.

Throughout, the claimants and their counsel have opposed the Bankruptcy Court's discovery orders through appeals, collateral litigation, and even contempt. *See Blair v. Bestwall, LLC*, 99 F.4th 679 (4th Cir. 2024); *Bestwall LLC v. Armstrong World Indus.*, 47 F.4th 233 (3d Cir. 2022). As this Court observed in the stay appeal, "Claimant Representatives' counsel have relentlessly attempted to circumvent the bankruptcy proceeding," thereby "prolonging the bankruptcy process and preventing the claimants from obtaining prompt relief." 71 F.4th at 184.

**4.** In 2023, five years after its first dismissal motion, the Committee moved again to dismiss Bestwall's bankruptcy case, presenting its newfound "jurisdictional" argument and re-raising *Carolin*. JA1870-71. The Bankruptcy Court denied the motion. It held that law of the case barred reconsideration of its application of *Carolin*. JA1883, 1920. And although it

accepted the Committee's contention that its Bankruptcy Clause argument raised a question of "constitutional subject matter jurisdiction," it then rejected that argument, finding "no cases at any level" concluding that *jurisdiction* requires "financial distress." JA1871, JA1885, JA1901. The Bankruptcy Court agreed to certify its denial for direct appeal, due to the jurisdictional issue. JA2203. This time, the Court accepted a direct appeal. D.I. 15, No. 24-170 (May 31, 2024).[1] The panel affirmed, over Judge King's dissent, concluding only that the Bankruptcy Court had subject-matter jurisdiction. Op.3.

---

[1] Earlier, this Court declined direct review of the application of *Carolin* in *Aldrich Pump LLC*, D.I. 50, No. 24-128 (April 17, 2024), and declined to review its decision *en banc*, D.I. 74, (May 15, 2024).

# REASONS FOR DENYING THE PETITION

Rehearing *en banc* is "not favored" and is ordinarily granted only to ensure uniformity with precedent or resolve a "question[] of exceptional importance." Fed. R. App. P. 40(b)(2), (c) ("FRAP"). The petition meets none of these standards.

## I. THE PANEL DECISION AFFIRMING SUBJECT-MATTER JURISDICTION BASED ON SETTLED PRECEDENT DOES NOT CONFLICT WITH A DECISION OF ANY COURT.

The Committee asserts that the panel decision is at odds with Supreme Court precedent, yet fails to cite *any* conflicting case. Pet.8. None exists.

### A. The panel decision conflicts with "no court" by holding that a debtor's eligibility is not a *jurisdictional* question.

**1.** Subject-matter jurisdiction is "straightforward," Op.9, turning on whether a federal court's authority is "conferred by Article III of the Constitution" and "granted by federal statute." *B.R. v. F.C.S.B.*, 17 F.4th 485, 492 (4th Cir. 2021) (citation omitted). Article III authorizes judicial power over all cases "arising under … the Laws of the United States." U.S. Const. art. III, § 2; Op.9. Congress, in turn, has given district courts "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a); Op.12 & n.11. Bestwall's bankruptcy, under Chapter 11 of Title 11, satisfies both requirements. Op.3, 12. This is uncontested, and it ends the jurisdictional inquiry, as the panel held.

Any other holding would *create conflict* with precedent, as the panel explained. Op.10-12. Federal courts routinely exercise jurisdiction to hear challenges to Congress's Article I authority and decide them on *the merits*. For example, when the Supreme Court in *United States v. Lopez* held that Congress exceeded its Commerce Clause authority, it did not disclaim jurisdiction. It affirmed a merits decision that "reversed respondent's conviction." 514 U.S. 549, 552 (1995); Op.11. The Supreme Court has followed this approach in other cases. Op.11-12 (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), and *City of Boerne v. Flores*, 521 U.S. 507 (1997)). So has this Court. *Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 404-05 (4th Cir. 2013).

In the Committee's view, by contrast, every case arising under federal law would obligate courts to (1) determine *sua sponte* at the outset whether the underlying statute accords with Article I and (2) hear Article I challenges at any point. The general federal-question statute, 28 U.S.C. § 1331, grants jurisdiction (similarly to § 1334) over all civil actions "arising under" federal law. So the Committee's theory would mean that, in *every federal-question case* (not just bankruptcy cases), courts *must* decide whether that statute exceeds Congress's Article I powers. *That* would be "sweeping" and "transform[ative]." Pet.3.

But the panel properly (and "narrow[ly]") recognized the Committee's constitutional arguments, though labelled as jurisdictional, as raising just merits questions of bankruptcy eligibility, which are not presented in this appeal. Op.3, 9, 11-13, 16. Because these challenges are "not targeted at the scope of Article III," they are "not challenges to the Court's subject matter jurisdiction." *In re Aldrich Pump LLC*, 2023 WL 9016506, at *13 (Bankr. W.D.N.C. Dec. 28, 2023); Op.9-11.

**2.** The panel's straightforward decision is consistent with all relevant appellate caselaw. As the panel explained, "all" circuit cases mentioning "constitutional subject matter jurisdiction" use that phrase simply "as a synonym for Article III standing." Op.10-11. The Committee cites no contrary case.

Similarly, "no court has ever accepted" the argument that "a debtor's ineligibility for bankruptcy is jurisdictional," and "at least five other circuits have rejected" it. Op.14 n.13. Even the Third Circuit in *In re LTL Management LLC*, which found a bankruptcy had not been filed in good faith under that court's different dismissal standard, recognized the bankruptcy court had jurisdiction. 64 F.4th 84, 99 (3d Cir. 2023); Op.4. And, just this month, before the Committee filed its petition, the Third Circuit held that, although an "improperly filed" bankruptcy case could be dismissed under

§ 1112(b), its flaws do not "strip bankruptcy courts of subject matter jurisdiction." *In re Whittaker Clark & Daniels Inc*, —F.4th—, 2025 WL 2611753, at *5 (3d Cir. Sep. 10, 2025). At least six circuits agree with the panel's view now, and still "no court has ever adopted the Committee's." Op.13.

**3.** The Committee does not even claim to identify any case holding that the Bankruptcy Clause dictates subject-matter jurisdiction. *Cf.* FRAP 40(b)(2)(A)-(C) (requiring "citation to the conflicting case or cases"). And it ignores the precedent the panel followed, such as *Lopez* and *City of Boerne*. Op.11-12.

The Committee's lead case, *Kokkonen v. Guardian Life Insurance Co. of America* (Pet.1, 8), did not address a constitutional defect with subject-matter jurisdiction, let alone hold that Article I determines it. 511 U.S. 375 (1994). It held only that there was "[n]o federal statute" authorizing jurisdiction over a type of "contract dispute." *Id.* at 381-82. Tellingly, the dissent here never mentioned this irrelevant case.

Nor does the plurality opinion in *Reid v. Covert*, 354 U.S. 1 (1957), conflict with the panel decision, which distinguished it on multiple grounds. The petition itself concedes *Reid* is at most "analogous," not conflicting. Pet.12. *Reid* considered constitutional limits on whom military courts may

try. It did not purport to address "subject-matter jurisdiction" or the Bankruptcy Clause. *Reid*, 354 U.S. at 5; Op.14-15. Its references to "jurisdiction"—likely "*personal* jurisdiction"—are at most "a vestige of an era in which jurisdictional arguments and phrases were used more liberally than they are today." Op.14-15. The dissent here never cited *Reid* either.

### B. The panel did not address the petition's side issues.

The Committee's real issue is not the panel's *holding* or even reasoning: It asks the Court to take up a broad question of congressional authority under the Constitution and revisit a lower court's earlier application of *Carolin*. But the panel *decided* neither issue (*see* FRAP 40(b)(2)), and neither warrants the full Court's consideration in the first instance.

#### 1. The panel did not resolve the merits of the Committee's Bankruptcy Clause argument, which is nonetheless wrong.

The panel did not decide, or address, the merits of the Committee's theory on the "original meaning" of the Bankruptcy Clause; that alone makes the issue inappropriate for *en banc* review. Because "challenges about a debtor's eligibility for bankruptcy protection are not jurisdictional," they formed no part of the "narrow question" the panel did decide. Op.16. Nor does the petition clarify what rule this Court should extract from the Committee's supposed originalist methodology. The Committee "never

defines" its "vague concept of 'financial distress,'" and "no one knows" what it means with its circular claim that the Bankruptcy Clause applies only to debtors who are "actually bankrupt." Op.8 n.8; Op.19 (concurrence).

In any event, the Committee's "selective focus on out-of-context" early law is "simply misplaced" given over a century of Supreme Court precedent. Op.17 (concurrence). The Supreme Court long has held that Congress's power "under the [B]ankruptcy [C]lause is not to be limited by the English or Colonial law in force when the Constitution was adopted." *Cont'l Ill. Nat'l Bank & Tr. Co. of Chi. v. Chi. Rock Island & Pac. Ry. Co.*, 294 U.S. 648, 669 (1935). Rather, it "extends to all cases where the law causes to be distributed the property of the debtor among his creditors" and to "the discharge of a debtor." *Hanover Nat. Bank v. Moyses*, 186 U.S. 181, 186 (1902) (quoting *In re Klein*, 42 U.S. 277, 281 (Mo. Cir. 1843) (Catron, J.)); *see id.* at 188 ("The subject of 'bankruptcies' includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property."). For such purposes, Congress has "plenary power," and the "'language used' did not 'limit' the scope of Congress' authority." *Siegel v. Fitzgerald*, 596 U.S. 464, 474 (2022) (quoting *Hanover*, 186 U.S. at 187). That authority, the Supreme Court unanimously emphasized three years ago, "includes nothing less than

the subject of the relations between a debtor and his creditors." *Id.* at 473 (citation omitted).

Consistent with *Siegel*, the Supreme Court has *never* found a statute to be beyond "the subject of Bankruptcies." U.S. Const. art. I, § 8. Nor has any court read a financial-distress or insolvency requirement into those words. As the Bankruptcy Court concluded, there are "simply no" such cases, "at any level." JA1901. The Committee ignores all of this—not even mentioning *Siegel* as it urges a position at odds with it. *En banc* review should resolve conflicting precedents, not create them.

### 2. Constitutional avoidance was not addressed by either the panel decision or the dissent and could not apply here.

Neither the majority nor the dissent addressed constitutional avoidance—rightly so. That canon applies to ambiguous statutes. *See* Resp.Br.48-49. Section 1334(a) is the only *jurisdictional* statute at issue, but its text is unambiguous, as the Committee concedes by silence. *Compare* Pet.8-9, *with* Pet.14-16; *see also* JA511 (first motion). Rather, the Committee seeks, in the name of avoiding the constitutional *jurisdictional* question it has belatedly raised, to have this Court reconsider the *merits* of the application of *Carolin* in a *prior* order (one that the Committee now asserts the Bankruptcy Court lacked jurisdiction to enter). That is a question the

majority *did not reach* and the dissent *did not mention*. This gambit fails to present a proper question for *en banc* review.

**First**, the application of *Carolin* was *never* before the panel. The Bankruptcy Court applied *Carolin* in a 2019 order; this Court declined direct review; and the District Court denied leave to appeal. *Supra* Bkgd.3. *Here*, the Bankruptcy Court merely found its earlier application of *Carolin* to be law of the case and declined to revisit that decision. JA1883, 1920. At most, since the "correctness" of the prior order was "not before" the panel, the Committee could have sought to challenge the law-of-the-case finding. *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 711 & n.5 (4th Cir. 2015).

**Second**, the Committee *abandoned* and thus forfeited any challenge even to that limited decision by failing to raise on appeal the Bankruptcy Court's law-of-the-case finding. *See* Open.Br.43-45. (Nor did the Committee mention law of the case, or *Carolin*, during oral argument.) Faced with the Committee's silence, the panel reasonably did not address that issue. *Cf.* Op.7 n.7 (mentioning *Carolin* only as background for first motion to dismiss). Even now, the Committee in its petition never mentions law of the case. Granting *en banc* review would require starting from scratch on an issue neither presented, nor preserved, nor decided. There are no grounds for doing so—particularly when this Court has applied the clear rule of

*Carolin* for decades, including to solvent debtors. *E.g.*, *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 280 (4th Cir. 2007).

***Finally***, constitutional avoidance does not authorize bypassing a *jurisdictional* question. The canon "does not apply in cases that fall outside the court's jurisdiction." *Lindke v. Tomlinson*, 31 F.4th 487, 495 (6th Cir. 2022). So when faced with a "threshold constitutional issue of whether [it has] subject-matter jurisdiction," a court must "determin[e]" it. *Id.*; *see* Resp.Br.50. Similarly, a case the panel cited (Op.10-11) recognized that, while a court may *choose among* "threshold issues" of jurisdiction, it may not *skip* jurisdiction. *Norfolk S. Ry. Co. v. Guthrie*, 233 F.3d 532, 534 (7th Cir. 2000). And the one case the petition cites (Pet.2, 14) merely involved alternative grounds for deciding the merits. *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51-52 (1984). The panel could not avoid the jurisdictional question—indeed, it was the "only one" presented. Op.16.

## II. THE PETITION PRESENTS NO QUESTION OF EXCEPTIONAL IMPORTANCE.

The Committee identifies no question of exceptional importance.

### A. The Committee mischaracterizes the panel decision.

The panel did not "expan[d]" or "transform[]" the law. Pet.3, 14. It did the opposite—with a narrow decision consistent with precedent and conflicting with "no court." Op.13; *see* Op.9, 16. It is *the Committee's*

position, although custom built for this case, that would work a sea-change. *Supra* Arg.I.A.1; Op.9.

The Committee further misdescribes the panel's decision as concluding the "Bankruptcy Clause plays no role in limiting a federal court's power to hear a case." Pet.12. But the majority did not reach the question of any would-be debtor's "*eligibility* for bankruptcy," under the Bankruptcy *Code* or the Bankruptcy *Clause*. Op.16 (emphasis added); *see* Op.13, 14 n.13. It said nothing about it.

So the Committee is also wrong in claiming the decision licenses "any wealthy and sophisticated person or corporation" to "concoct a bankruptcy." Pet.17. Indeed, the panel *did* recognize that financial condition "may be relevant in a number of contexts." Op.3. And statutory and judicial guardrails continue to prevent abuse, including § 524(g) itself. *Supra* Bkgd.1; § 1112(b)(1), (4).

Similarly, the Committee and its amici miss the mark with jabs at divisional-merger bankruptcies. *See, e.g.*, Pet.3; Rave.9; *Aldrich* Comm.5. The panel could not have been clearer: "this appeal is not about the validity" of such bankruptcies. Op.9. Indeed, the Committee *conceded* at argument that its position does not "have anything to do with" divisional mergers and, accordingly, is also not limited to them. Arg.Tr.16:8-16:14; Op.9.

**B.  The Committee's incessant attacks are what "unduly delay justice," and its position would extend that costly delay to innumerable other bankruptcy cases.**

The Committee erroneously insists that the "majority's decision unduly delays justice." Pet.17; *see Aldrich* Comm.7. Supposed "delay" is not a "question[]" presented here, FRAP 40(b), and, therefore, is not a proper basis to argue exceptional importance.

Regardless, this bankruptcy aims to pay claims equitably and without delay, ending the inefficiencies and erratic results experienced in the tort system. *See Bestwall*, 71 F.4th at 183. Fault for any delay lies with the Committee. It continues to use "jurisdictional arguments as a back-door way" to stymie this case. *Id*. These attempts remain "the main interference with the timely resolution of the claims in Bestwall's bankruptcy," *id*.— particularly here, where the Committee waited years to raise its constitutional argument in its *third* dismissal motion. It cannot complain about "improper" delays of its own making. *See id*.

And the Committee's position would be a recipe for delaying and increasing the cost of bankruptcy beyond this case. Because no one knows what "financially distressed" or "actually bankrupt" means, requiring them would be a recipe for endless litigation up-front in both corporate and individual bankruptcies. Worse, if the question were jurisdictional,

opponents could file such motions to dismiss at any point, as here; even if they did not, courts would have to address the issue *sua sponte*. *See* Op.15; *see also* Op.20-22 (concurrence); *supra* Arg. I.A.1.

### C. The panel decision reduces forum shopping.

Finally, the Committee and its amici warn of "forum" shopping. Pet.17; Rave 8; *Aldrich* Comm.6-7. But that would only be a concern with *their bespoke* jurisdictional rule, which would diverge from every appellate court that has reached the issue. *Supra* Arg.I.A. By contrast, the panel's jurisdictional holding, by *not* diverging, provides *no* incentive to forum shop. Regardless, venue concerns are governed by the statutes designed for them, not by subject-matter jurisdiction. *See* 28 U.S.C. § 1408 (venue), § 1412 (transfer); *Bestwall*, 605 B.R. at 51-53 (denying transfer). They have no bearing on the panel decision.

### CONCLUSION

The petition should be denied.

Dated:
September 29, 2025

Respectfully submitted,

 /s/ *C. Kevin Marshall*
Noel J. Francisco
C. Kevin Marshall
Caleb Redmond
Lauren Straight
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
njfrancisco@jonesday.com
ckmarshall@jonesday.com
credmond@jonesday.com
lstraight@jonesday.com

Gregory M. Gordon
JONES DAY
2727 North Harwood St., Ste. 500
Dallas, Texas 75201
Telephone: (214) 220-3939
gmgordon@jonesday.com

Jeffrey B. Ellman
JONES DAY
1221 Peachtree St., N.E., Ste. 400
Atlanta, Georgia 30361
Telephone: (404) 581-8309
jbellman@jonesday.com

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW & HINSON, P.A.
600 South Tryon St., Ste. 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
gcassada@rbh.com
rworf@rbh.com

*Counsel for Appellee Bestwall LLC*

## <u>CERTIFICATION</u>

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 40(d)(4) because it contains 3,897 words excluding the parts exempted by Fed. R. App. P. 32(f). This Brief has been prepared in a proportionally spaced 14-point Georgia font in the text and footnotes, using Microsoft Word. This certification has been prepared in reliance on the word count function of Microsoft Word.

*/s/ C. Kevin Marshall*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 29, 2025, I filed the foregoing using this Court's CM/ECF system, which effected service on all parties.

  /s/ *C. Kevin Marshall*